IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TROY WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| -v- | § | Civil No. 4:22-cv-1697 |
| | § | |
| AMERICAN SERVICES, L.L.C., | § | |
| | § | |
| Defendant. | § | |

### PLAINTIFF TROY WILLIAMS' ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

American Services, L.L.C. ("American Services" or "Defendant") subjected Troy Williams ("Mr. Williams" or "Plaintiff"), an African-American employee, to extreme race discrimination and blatant retaliation. Additionally, American Services breached its employment agreement with Mr. Williams by failing to pay Mr. Williams the commissions he was contractually guaranteed.

American Services allowed its manager, Eric Pettigrew, a Caucasian employee, to openly refer to Mr. Williams as an "educated nigger." One of the employees involved in this conversation, Coby Leggett, informed Mr. Williams of what was said. This prompted Mr. Williams to file a complaint of discrimination with James Hinton, American Services' Compliance Consultant. However, American Services never reprimanded Mr. Pettigrew.

After Mr. Williams filed his complaint of race discrimination, American Services started to treat Mr. Williams differently. For example, American Services started spying on Mr. Williams' activities by attempting to install a GPS on his company vehicle. No other employee in upper

management was subjected to having a GPS device in their vehicles. Additionally, American Services denied Mr. Williams a company credit card when all other managers possessed one. Accordingly, Mr. Williams filed a second complaint of race discrimination and retaliation. That *very same day*, American Services fired Mr. Williams.

Lastly, American Services failed to pay Mr. Williams the third and fourth quarter commissions Mr. Williams was contractually guaranteed by his employment contract.

## I.
## PARTIES

1. Troy Williams is an individual who currently resides in Washington state. However, at all times relevant to this lawsuit, Mr. Williams resided in Harris County, Texas.

2. Defendant American Services is a Mississippi corporation headquartered in DeSoto County, Mississippi. Defendant does not appear to have a registered agent in the state of Texas, as Plaintiff has been unable to determine the identity of that registered agent. Therefore, Defendant may be served through the Texas Secretary of State.

## II.
## JURISDICTION AND VENUE

3. This Court has original jurisdiction to hear the merits of Plaintiff's Section 1981 claims under 28 U.S.C. §§ 1331 and 1343(a)(4). This Court has original jurisdiction to hear the merits of Plaintiff's Title VII claims under 42 U.S.C. § 2000e-5(f)(3).

4. Venue is appropriate in the Southern District of Texas because the acts giving rise to this suit occurred in the Southern District. Specifically, in Harris County, Texas.

## III.
## FACTS

5. Troy Williams first started working for American Services as a Consultant from Upchurch Services, L.L.C. on May 20, 2020.

6. On July 1, 2020, Mr. Williams signed an agreement with Jon Settlemires, the CFO of American Services, and became an Environmental Manager for American Services.

7. At the time of his hire, Mr. Williams was the only African American in upper-management.

**A. American Services subjected Mr. Williams to extreme race discrimination and blatant retaliation.**

8. In or around September 2020, Eric Pettigrew (Caucasian), American Services' Operations Manager and Mr. Williams' direct supervisor, told Coby Leggett, a former General Manager for American Services, that Mr. Williams was an "educated nigger."

9. Mr. Leggett informed Mr. Williams of Mr. Pettigrew's racist statements

10. As a result, Mr. Williams filed a complaint of race discrimination with James Hinton, American Services' Compliance Consultant.

11. After filing his complaint, American Services started treating Mr. Williams less favorably than similarly situated Caucasian employees.

12. American Services attempted to install a GPS in Mr. Williams' vehicle to monitor his location.

13. None of the other members of upper-management had a GPS device installed in their vehicles.

14. American Services also refused to provide Mr. Williams with a company credit card.

15. Every other member of upper-management was provided a company credit card.

16. Thus, after filing his complaint, American Services began treating Mr. Williams as if he were below his rank.

B. **American Services terminated Mr. Williams immediately after he filed his second complaint of race discrimination.**

17. On the morning of January 16, 2021, after enduring months of discrimination based on his race, Mr. Williams sent an email to Kendall Prewett, the President of American Services, to make a second complaint of race discrimination.

18. In the email, Mr. Williams asserted that American Services was subjecting him to race discrimination in the workplace.

19. Mr. Williams explicitly informed Mr. Prewett that managers in the workplace openly used the term, "Nigger."

20. *That very same day*, American Services, through Mr. Prewett, fired Mr. Williams.

21. Within hours of the termination, Mr. Prewett instructed Mr. Pettigrew, the employee who openly referred to Mr. Williams as an "educated nigger," to travel to Mr. Williams' home with the Houston Police Department to retrieve company property.

22. American Services fired Mr. Williams because of his race and because of his complaints of race discrimination.

23. American Services' actions violate Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

C. **American Services breached its employment contract with Mr. Williams by failing to pay Mr. Williams his third and fourth quarter commissions for the year 2020.**

24. On July 1, 2020, Mr. Williams signed an employment contract with American Services.

25. The employment contract was executed on behalf of American Services by its CFO, Jon Settlemires.

26. In the contract, American Services agreed that it would pay Mr. Williams, in addition to his base salary, "a commission of 3% on Gross Profit."

27. The commission was to be paid quarterly.

28. American Services failed to pay Mr. Williams the commissions he earned for the third or fourth quarters of 2020.

29. Mr. Williams complained to Mr. Prewett, both in writing and verbally, while he was still employed that he had never been paid his commissions for the third or fourth quarter of 2020.

30. Mr. Prewett verbally affirmed that Mr. Williams would be paid his commissions.

31. However, to the date of filing, American Services has never paid Mr. Williams the commissions in breach of the agreement signed by both parties on July 1, 2020.

## IV.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

32. Plaintiff timely filed a charge of discrimination against defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiff files this complaint within 90 days after receiving a notice of right to sue from the EEOC.

33. All conditions precedent to the bringing of this suit have been satisfied or fulfilled.

## V.
## RACE DISCRIMINATION UNDER TITLE VII

34. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

35. Plaintiff is African American and the member of a protected class under Title VII.

36. Defendant treated Plaintiff less favorably than Caucasian employees by allowing its employees to direct discriminatory statements at him, attempting to install GPS tracking in his company vehicle, refusing to provide him a company credit card, and terminating Plaintiff.

37. Defendant's actions in discriminating against Mr. Williams were undertaken because of his race.

38. Defendant's actions constitute violations of the Title VII of the Civil Rights Act of 1964.

39. Due to Defendant's actions, Mr. Williams has suffered, and continues to suffer, damages including but not limited to lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

40. Defendant's actions were intentional, malicious, and committed with reckless indifference to Mr. Williams' federally-protected rights.

## VI.
## RACE DISCRIMINATION UNDER 42 U.S.C. § 1981

41. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

42. Defendant's actions in discriminating against Mr. Williams were undertaken because of his race.

43. Defendant's actions constitute a violation of 42 U.S.C. § 1981.

44. Due to Defendant's actions, Mr. Williams has suffered, and continues to suffer, damages including but not limited to lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

45. Defendant's actions were intentional, malicious, and committed with reckless indifference to Mr. Williams' federally-protected rights.

46. Defendant's acted with malice or reckless indifference to the rights of Mr. Williams, thereby entitling him to an award of punitive damages.

## VII.
## RETALIATION UNDER TITLE VII

47. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

48. Plaintiff made two protected complaints about race discrimination to Defendant.

49. Defendant retaliated against Plaintiff by allowing its employees to direct discriminatory statements at him, attempting to install GPS tracking in his company vehicle, refusing to provide him a company credit card, and terminating Plaintiff.

50. Defendant's actions in retaliating against Mr. Williams were undertaken because he made complaints of race discrimination.

51. Defendant's actions constitute violations of the Title VII of the Civil Rights Act of 1964.

52. Due to Defendant's actions, Mr. Williams has suffered, and continues to suffer, damages, including but not limited to, lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

53. Defendant's actions were intentional, malicious, and committed with reckless indifference to Mr. Williams' federally-protected rights.

## VIII.
## RETALIATION UNDER 42 U.S.C. § 1981

54. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

55. Plaintiff made two protected complaints about race discrimination to Defendant.

56. Defendant retaliated against Plaintiff by allowing its employees to direct discriminatory statements at him, attempting to install GPS tracking in his company vehicle, refusing to provide him a company credit card, and terminating Plaintiff.

57. Defendant's actions in retaliating against Mr. Williams were undertaken because he made complaints of race discrimination.

58. Defendant's actions constitute violations of 42 U.S.C. § 1981.

59. Due to Defendant's actions, Mr. Williams has suffered, and continues to suffer, damages, including but not limited to, lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

60. Defendant's actions were intentional, malicious, and committed with reckless indifference to Mr. Williams' federally-protected rights.

## IX.
## BREACH OF CONTRACT

61. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

62. Plaintiff and Defendant had a valid, enforceable contract.

63. Plaintiff is a proper party to sue for breach of contract.

64. Plaintiff performed, tendered performance of, or was excused from performing his contractual obligations.

65. Defendant breached the contract.

66. Defendant's breach caused the Plaintiff's injury.

67. Because of the actions of Defendant, Plaintiff has suffered damages within the jurisdictional limits of this Court.

# X.
# JURY DEMAND

68. Plaintiff hereby makes a demand for a trial by jury on all issues, claims, and defenses in this action.

# XI.
# DAMAGES

69. WHEREFORE, Plaintiff Troy Williams respectfully requests that the above-named Defendant, be cited to appear in this matter and that, after jury trial by proof, he be awarded:

　　i. Back pay, including but not limited to, lost wages, and other employment benefits;
　　ii. Front pay, including but not limited to wages, and other employment benefits;
　　iii. Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;
　　iv. Actual damages;
　　v. Punitive damages;
　　vi. Injunctive relief;
　　vii. Judgment against Defendant for Plaintiff's reasonable attorneys' and experts' fees; and costs of suit;
　　viii. Prejudgment and post-judgment interest as allowed by law; and
　　ix. Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled, as this court may deem proper.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Summons be issued, and that upon a trial on the merits Plaintiff be awarded the relief requested in this Complaint and such other and further relief to which he may be justly entitled.

Respectfully submitted,

*Marcos De Hoyos*
Marcos D. De Hoyos (*Attorney-in-Charge*)
Texas Bar No. 24121558
SDTX Federal ID No. 3631573
Robert J. Wiley*
Texas Bar No. 24013750
SDTX Federal ID No. 596499
*Board Certified in Labor and Employment Law
by the Texas Board of Legal Specialization*

WILEY WHEELER, P.C.
1651 Richmond Ave.
Houston, Texas 77006
Telephone: (713) 337-1333
Facsimile: (713) 337-1334
mdehoyos@wiley-wheeler.com

ATTORNEYS FOR PLAINTIFF